UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID LEON KENDRICK,

      Petitioner,

v.                                          Case No. 6:10-cv-333-Orl-31KRS

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____

## <u>ORDER</u>

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 12). Petitioner filed a reply to the response (Doc. No. 18).

Petitioner alleges nine claims for relief in his habeas petition. For the following reasons, the petition is denied.

## I.   *Procedural History*

Petitioner was charged by information with two counts of attempted first degree murder (counts one and two), burglary of a dwelling with an assault or battery with a weapon (count three), aggravated battery (count four), grand theft of a vehicle (count five), and violation of a domestic violence injunction (count six). The State nol prossed count six,

and a jury trial was conducted on the remaining counts. The jury found Petitioner guilty of the lesser-included offense of attempted second degree murder as to count one, not guilty of count two, and guilty of counts three through five. The state court sentenced Petitioner concurrently to thirty-year terms of imprisonment for the attempted second degree murder and aggravated battery count, to life in prison for the burglary of a dwelling with an assault or battery with a weapon, and to a five-year term of imprisonment for grand theft. Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam*.

Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. The state court denied the motion. Petitioner appealed, and the Fifth District Court of Appeal of Florida affirmed *per curiam*.

## II. *Legal Standards*

### A. *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider."  *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).  The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable."  *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B.      Standard for Ineffective Assistance of Counsel**

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id*. at 687-88.   A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.   *Id*. at 689-90.   "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir.1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.  *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

---

[1]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III. Analysis

### A. Claim One

Petitioner asserts that the trial court erred by denying his motion for mistrial after Sabrina Johnson ("Johnson"), one of the victims in the case, lost control of her emotions while testifying. In support of the claim, Petitioner notes that Johnson screamed and called him a monster, which denied him of a fair and impartial trial.

Petitioner raised this claim on direct appeal. The Fifth District Court of Appeal of Florida affirmed *per curiam*.

Pursuant to Florida law, a motion for mistrial should be granted only when the error was so prejudicial and fundamental that it denied the defendant of a fair trial. *See Buenoano v. State*, 527 So. 2d 194 (Fla. 1988). Moreover, the Eleventh Circuit has held "the decision on whether to grant a mistrial lies within [the trial court's] sound discretion" given that "the trial judge is in the best position to evaluate the prejudicial effect of a spectator's outburst." *Messer v. Kemp*, 760 F.2d 1080, 1087 (11th Cir. 1985) (denying habeas relief on claim that trial court erred by not granting mistrial after the victim's father lunged at the defendant and shouted at him in the presence of the jury). Thus, in the absence of an abuse of discretion courts may not intervene. *Id.*

The record establishes that the third time Johnson testified, she yelled, called Petitioner a monster, and said he left her to die. (App. B at 655.) The trial judge immediately removed the jury from courtroom. *Id*. Defense counsel moved for a mistrial, and the trial judge denied the motion, reasoning as follows:

> And the issue is has it so permeated the trial that it would be unfair to continue the trial at this point in time. There's some evidence in the record that this victim suffered a stroke at the time of her surgery when she practically died on the operating table.
>
> Having presided over all the presentation, I don't think that her outburst is such that the trial needs to begin anew. But I do think that I should instruct the jury to disregard her testimony and emphasize that the State has the burden of proof, and the defense has no burden, and they are to decide this case based upon the solicitation of testimony and any other documentary evidence. . . .

*Id*. at 658-59. Thereafter, the trial court instructed the jury to disregard Johnson's outburst and advised the jury that the verdict must be based on the evidence and the law and not on any feelings of prejudice, bias, or sympathy. *Id*. at 560.

In light of the trial court's curative instruction, the Court concludes that Petitioner has not established that the trial court abused its discretion by denying the motion for mistrial. Accordingly, claim one is denied pursuant to Section 2254(d).

### B.     *Claim Two*

Petitioner asserts that his convictions for attempted second degree murder (count one) and aggravated battery (count four) of Sabrina Johnson violated his right against double jeopardy. Petitioner raised this claim on direct appeal, and the Fifth District Court of Appeal affirmed *per curiam*.

The Double Jeopardy Clause of the United States Constitution "protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). To determine whether a double jeopardy violation has occurred based on multiple convictions stemming from the same conduct, but pursuant to separate statutes, the Court must undertake a two-part analysis. *See Williams v. Singletary*, 78 F.3d 1510, 1513 (11th Cir. 1996). First, the Court must determine "whether there exists a clear legislative intent to impose cumulative punishments, under separate statutory provisions, for the same conduct." *Id.* If a clear indication exists of such legislative intent, the double jeopardy bar does not apply. *Id.* However, "[i]f there is no clear indication of legislative intent to impose cumulative punishments, [courts] examine the relevant statutes under the same-elements test of *Blockburger* [*v. United States*, 284 U.S. 299 (1932)]." *Id.* Pursuant to the "same-elements" test, "if each statutory offense requires proof of an element not contained in the other, the offenses are not the 'same' and double jeopardy is no bar to cumulative punishment." *Id.*

In the instant case, it is not clear from the statutory language of the relevant statutes whether the legislature intended to impose cumulative punishments pursuant to the aggravated battery and attempted second degree murder statutes for actions stemming from the same conduct. As such, the Court must examine the statutes pursuant to the "same-elements" test.

Pursuant to Florida law, "[a] person commits aggravated battery who, in committing battery. . . [i]ntentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement. . . ." Fla. Stat. § 784.045(1)(a)(1) (2004). In contrast,

attempted second degree murder consists of the following elements: "(1) the defendant intentionally committed an act that could have resulted, but did not result, in the death of someone, and (2) the act was imminently dangerous to another and demonstrated a depraved mind without regard for human life." *State v. Florida,* 894 So. 2d 941, 946 (Fla. 2005), *receded from on other grounds* (citing *Brown v. State*, 790 So. 2d 389, 390 (Fla. 2000)); *see also* Fla. Stat. §§ 777.04(1) & 782.04(2) (2004). Pursuant to the relevant statutes, the Florida Supreme Court has held that

> attempted second-degree murder and aggravated battery with a deadly weapon each has an element distinct from the other. Victim contact is unnecessary for attempted second-degree murder but essential to aggravated battery, and unlike attempted second-degree murder, an act need not have had the potential to cause death to constitute aggravated battery.

*Florida*, 894 So. 2d at 946 (citing *Schirmer v. State,* 837 So. 2d 587, 589 (Fla. 5th DCA 2003)).

Thus, because each offense required proof of an element not included in the other offense, Petitioner was not subjected to multiple punishments for the same offense pursuant to the *Blockburger* test. Accordingly, Petitioner has not established that the state court's determination that convictions for attempted second-degree murder and aggravated battery do not violate double jeopardy is either contrary to, or an unreasonable application of, *Blockburger*; and claim two must be denied.

### C. *Claim Three*

Petitioner contends that trial counsel rendered ineffective assistance by failing to object to, and thereby preserve for review, the erroneous burglary jury instruction. In support of the claim, Petitioner contends that he was charged in the information with

unlawfully remaining in the dwelling, but the burglary instruction had the effect of instructing the jury that he was charged with unlawfully entering the dwelling. Petitioner maintains, therefore, that he was convicted of a crime for which he was not charged.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied the claim pursuant to *Strickland*. (App. G at 231.) The state court noted that Petitioner was charged with burglary by remaining in a dwelling, which consists of two elements: "(1) permission to enter the dwelling and (2) remaining, either (a) surreptitiously and with the intent to commit an offense, (b) after permission was withdrawn and with an intent to commit an offense, or (c) with the intent to commit a forcible felony of murder or aggravated battery." *Id.* (citing Fla. Stat. § 810.02(1)(b) (2001)). The state court concluded that Petitioner failed to demonstrate prejudice based on counsel's failure to object to the burglary instruction, even though the instruction did not track the standard language of the jury instruction. *Id.* The state court reasoned that the trial court did not fail to instruct the jury on an element of the offense that was disputed at trial and the instruction did not lessen the State's burden of proof. *Id.*

The Florida Supreme Court has held:

Instructions . . . are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred. To justify not imposing the contemporaneous objection rule, "the error must reach down into the validity of the trial itself to the extent that *a verdict of guilty could not have been obtained without the assistance of the alleged error.*" In other words, "*fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict.*" Failing to instruct on an element of the crime over which the record reflects there was no dispute is not fundamental error and there must be an objection to

preserve the issue for appeal.

*Martinez v. State*, 981 So. 2d 449, 455 (Fla. 2008) (emphasis in original) (quoting *State v. Delva*, 575 So. 2d 643, 644-45 (Fla. 1991)).  When a contemporaneous objection is made to a jury instruction, however, the Florida appellate courts consider whether the erroneous jury instruction resulted in harmless error.  *See State v. Kettell*, 980 So. 2d 1061, 1068 (Fla. 2008) (holding that error in jury instruction on the element of offense of wantonly or maliciously shooting at, within, or into building, which was objected to at trial, could not be considered harmless error).  To demonstrate an absence of harmless error, the State must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction."  *State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986) (citing *Chapman v. California*, 386 U.S. 18, 24(1967)).

The record reflects in this case that Petitioner was charged with burglary of a dwelling by remaining in the dwelling with the intent to commit or attempt to commit a forcible felony.  (App. A at 13.)  The trial court instructed the jury as to the burglary charge as follows:

> To prove the crime of burglary, the State must prove the following three elements beyond a reasonable doubt:
>
> 1.  David Leon Kendrick remained in a dwelling owned by or in the possession of Virdena Roberts.
>
> 2.  David Leon Kendrick did not have the permission or consent of Virdena Roberts, or anyone authorized to act for Virdena Roberts to remain in the dwelling at the time.

3.      At the time of remaining in the dwelling, David Leon Kendrick had a fully-formed conscious intent to commit the offense of murder or aggravated battery in that dwelling.

(App. B at 765.)  In contrast, Florida Standard Criminal Jury Instruction 13.1 provides in pertinent part:

> To prove the crime of Burglary, the State must prove the following two elements beyond a reasonable doubt:
>
> 1. *(Defendant) had permission or consent to enter a [structure] [conveyance] owned by or in the possession of (person alleged).*
>
> 2. (Defendant), after entering the [structure] [conveyance], remained therein
>
> Give 2a, 2b, or 2c as applicable.
>
> > a. surreptitiously and with the intent to commit [an offense] [(the crime alleged)] inside the [structure] [conveyance].
> >
> > b. after permission to remain had been withdrawn and with the intent to commit [an offense] [(the crime alleged)] inside the [structure] [conveyance].
> >
> > c. with the intent to commit or attempt to commit a [forcible felony] [(the forcible felony alleged)] inside the [structure] [conveyance].

Fla. Std. Jury. Instr. (Crim.) 13.1( emphasis added).  Comparing the instruction given to the jury with the standard instruction, it is clear that the trial court did not instruct the jury as to the first element.  Thus, given that counsel failed to object to the trial court's failure to instruct the jury on this element and did not preserve the issue for appellate review, the Court must consider whether the error resulted in harm to Petitioner, which would warrant appellate relief and establish prejudice pursuant to *Strickland*.

At trial, Johnson and Virdena Roberts ("Roberts"), Johnson's sister and the other victim, maintained that Petitioner did not have permission to enter the home on the date of the incident. However, Petitioner testified that he had a garage door opener to Johnson's house, which he used with her knowledge to enter the house. (App. B at 571-73.) Petitioner further testified that Johnson allowed him to enter the home without knocking when she was present and knew he was coming. *Id*. at 573. Petitioner said that he had spoken to Johnson the day prior to the incident and they had made plans for him to remove his television from the house on the following day. *Id*. at 578-80. Petitioner testified that he later spoke to Johnson on the morning of the incident at which time she told him that she had something she wanted to tell him and would do so when she saw him later that morning. *Id*. at 584-85, 614, 629. Therefore, according to Petitioner's testimony, he and Johnson had plans for him to come to her home on the morning of the incident and he entered the home with her consent as he had done other times when she knew he was coming. In other words, Petitioner's testimony was that he had permission or consent to enter Johnson's home.

Assuming defense counsel had objected to the burglary jury instruction, which presumably would have resulted in the trial court instructing the jury that the State had to prove beyond a reasonable doubt that Petitioner had permission or consent to enter a Johnson's home, the Court cannot conclude that there is a reasonable possibility that the error contributed to the conviction. Petitioner maintained repeatedly that he had permission to enter Johnson's home. Thus, Petitioner admitted the element on which the

trial court did not instruct the jury. *See, e.g., Nash v. State*, 951 So. 2d 1003, 1005 (Fla. 4th DCA 2007) ("[t]he failure to give a jury instruction on an element of a crime is fundamental error if the element was disputed at trial."). As such, the error was harmless, and the appellate court would not have granted relief if the issue had been properly preserved for review. Thus, Petitioner has not demonstrated that he was prejudiced by counsel's failure to object to the burglary instruction, and this claim is denied pursuant to Section 2254(d).

### C.   Claim Four

Petitioner maintains that trial counsel rendered ineffective assistance by failing to enter in to evidence Johnson's telephone and cellular phone records. Petitioner contends that such records would have impeached Johnson's testimony and shown that Johnson initiated contact with Petitioner.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (App. G at 233.) The state court reasoned that Johnson admitted that she spoke with Petitioner via telephone and Roberts also testified that Johnson called Petitioner. *Id*. The state court concluded that no reasonable probability existed that the admission of the telephone records would have established that Petitioner did not stalk and watch Johnson or would have resulted in a different outcome. *Id*.

The state court's determination is supported by the record. Johnson admitted that she initiated some telephone conversations with Petitioner and met with him after he had moved out of the home. (App. B at 243, 248, 252.) Likewise, Roberts testified that Petitioner and Johnson talked on the phone after he moved out of the home. *Id*. at 354.

More importantly, even assuming that the telephone records established that Johnson called Petitioner, there is no indication that such evidence would have refuted the overwhelming evidence of Petitioner's guilt presented at trial, which included *inter alia* Petitioner's confession to police. Accordingly, Petitioner has not demonstrated he was prejudiced by counsel's failure to admit Johnson's telephone records into evidence, and this claim is denied pursuant to Section 2254(d).

### E.    *Claim Five*

Petitioner contends that counsel rendered ineffective assistance by failing to properly convey the State's plea offer. Petitioner admits that counsel mailed him the State's plea offer pursuant to which the State agreed to nol pros counts two and four through six in return for a plea of guilty to counts one and three. Petitioner complains, however, that counsel failed to give him advice concerning the State's plea offer.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied the claim pursuant to *Strickland*, reasoning that Petitioner failed to establish prejudice. (App. G at 235.)

Petitioner has not shown that the state court's denial of this claim is contrary to, or an unreasonable application of, federal law. Even assuming that counsel did not adequately advise Petitioner as to the State's plea offer, Petitioner has not alleged that absent counsel's failure to do so, he would have accepted the plea agreement and not have proceeded to trial. Furthermore, any such allegation by Petitioner that he would have entered a plea of guilty if the plea offer had been explained is refuted by Petitioner's

testimony at the sentencing hearing.

At trial, Petitioner testified that he had been offered a plea whereby he could have pled guilty to two charges which carried mandatory life sentences. (App. B at 634.) Thereafter, the prosecution clarified that there were no minimum mandatory sentences for any of the charges. *Id*. at 638, 698-703. After Petitioner had been advised on the record that he was not subject to mandatory life sentences for any of the charges, he made the following statements at sentencing:

> It was not my intent to kill anybody. It was not my intent to hurt anybody. It was not my intent to assault anybody, burglarize anybody, anything, steal anybody's car, any of that that I have been accused of.
>
> *And, like I told you in trial, I will not plead guilty to something I didn't do.* When I got arrested, I told the detective what I told the detective because I did not want my friend to suffer anymore than she already had.

(App. A at 270) (emphasis added). Thus, Petitioner explicitly stated he was innocent of the offenses and would not enter a plea of guilty to the charges. Accordingly, Petitioner has failed to demonstrate that he was prejudiced by counsel's purported failure to advise him properly about the terms of the plea offer, and this claim is denied pursuant to Section 2254(d).

### F.    *Claim Six*

Petitioner asserts that counsel rendered ineffective assistance by failing to call Debonnie Brown ("Brown") as a witness. In support of this claim, Petitioner maintains that Brown could have testified that (1) Roberts did not see Petitioner stab Johnson and (2) Johnson told Petitioner to come see her.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied the claim pursuant to *Strickland*. (App. G at 234.) The state court reasoned that Brown's purported testimony would not have impeached the trial testimony. *Id*. The state court concluded, therefore, that Petitioner failed to establish prejudice. *Id*.

The state court's determination is supported by the record. The appendix contains the interview of Brown by Detective Harvey, wherein Brown recounts what Roberts told her about the offenses. (App. G at 64-73.) Specifically, Brown said that Roberts told her that she went upstairs, saw Petitioner and Johnson fighting, and tried to get the knife at which point Petitioner hit her (Roberts) and knocked her unconscious. *Id*. at 68. Brown stated that Roberts said that when she regained consciousness, Johnson said to her, "Don't let me die." *Id*. Brown also said that her husband told her that Johnson at one time said she called Petitioner to find out if he knew where her purse was and that Roberts had told her that Johnson had gone out with Petitioner recently. *Id*. at 70.

Assuming that any of Brown's testimony was admissible, none of the statements would have impeached either Roberts' or Johnson's testimony. Roberts testified that she ran upstairs, saw Petitioner smashing Johnson's head into the bathtub, and picked up a knife on the bathroom counter to attempt to make Petitioner stop. (App. B at 331.) Roberts said that she did not think Petitioner had a knife in his hands when she entered the bathroom and she did not see Petitioner stabbing Johnson. *Id*. at 332. Likewise, Johnson testified that she and Petitioner spoke on the telephone and continued to meet after he had moved out of her house. Thus, counsel was not deficient for failing to call Brown as a

witness given that her testimony did not refute Johnson's or Roberts' testimony, and Petitioner was not prejudiced by counsel's failure to call Brown as a witness. Accordingly, claim six is denied pursuant to Section 2254(d).

### G. Claim Seven

Petitioner contends that counsel rendered ineffective assistance by failing to object to the testimony of Detective Harvey regarding statements made by Petitioner which were contained on a video. Petitioner maintains that the State was precluded from questioning Detective Harvey about statements Petitioner made on the video because the prosecution chose not to enter the video into evidence. Petitioner further argues that counsel failed to watch the video which would have allowed her to object to Detective Harvey's testimony concerning the statements made during the video.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied the claim pursuant to *Strickland*. (App. G at 235-36.) The state court noted that counsel did review the videotape and filed a motion to redact portions of the tape. *Id*. at 235. The state court further reasoned that Detective Harvey was allowed to testify about his conversation with Petitioner and counsel had no basis to object to such testimony. *Id*. at 236. The state court concluded that Petitioner failed to establish prejudice from counsel's failure to object to Detective Harvey's testimony. *Id*.

Petitioner has failed to demonstrate that the state court's determination is contrary to, or an unreasonable application of, *Strickland*. Petitioner has not identified any specific testimony of Detective Harvey that was objectionable or inadmissible. Moreover,

statements made by counsel during the trial demonstrate that she had watched the video. (App. 441.)  As such, Petitioner has not shown either deficient performance or prejudice. Accordingly, claim seven is denied pursuant to Section 2254(d).

### H.     Claim Eight

Petitioner asserts that counsel rendered ineffective assistance by failing to object to two jurors who were untruthful during voir dire.  Petitioner contends that one juror's father was a convicted felon and the other juror had convictions for "fraud and dishonesty."  (Doc. No. 1 at 21.)  Petitioner argues that counsel should have moved to dismiss the two jurors and objected to the jurors to preserve the issue for appeal.

Petitioner raised this claim in his Rule 3.850 motion.  The state court denied the claim pursuant to *Strickland*.  (App. G at 236.)  The state court noted that one juror told the trial court after voir dire that his father had been convicted of a felony approximately fifteen years earlier and another juror told the trial court that he had arrests for a stealing a hat and cashing bad checks which he did not think were felonies.  *Id*.  The state court reasoned that neither juror made intentional misrepresentations or was actually biased. *Id*.  The state court concluded, therefore, that Petitioner failed to prove he was prejudiced. *Id.*

The record reflects that after the jury had been selected, the prosecutor informed the trial court that she thought one of the jurors was a convicted felon and one of the jurors had lied about whether he had been arrested.  (App. B at 154-57.)  The trial court questioned the jurors concerning their representations to the court.  *Id*. at 160-71.  One of the jurors told the

trial judge that he had not been convicted of a felony but his father had although he did not know the nature of the conviction. *Id*. at 161-62. Likewise, when asked by the trial judge, the other juror admitted that he had been arrested approximately fifteen years earlier for misdemeanors for stealing a hat and cashing bad checks. *Id*. at 168. The juror explained that he thought the prosecutor was asking about felony convictions. *Id*. at 169. The juror affirmed that he could be fair to the State and defense and could decide the case based on the evidence and law. *Id*. at 169-70.

Petitioner has not demonstrated that counsel was deficient for failing to move to dismiss or object to the jurors. From the record, neither of the jurors intentionally lied about their criminal history. Furthermore, one of the jurors had never been convicted of an offense and the juror who had been convicted of misdemeanors told the court that he could be impartial and follow the law. Thus, Petitioner has not shown established that a reasonable probability exists that the jurors would have been dismissed or that he would have been successful on appeal had counsel objected to the jurors. Accordingly, this claim is denied pursuant to Section 2254(d).

### I.      *Claim Nine*

Petitioner contends that counsel rendered ineffective assistance by failing to object to his convictions for burglary of a dwelling with assault or battery with a deadly weapon (count three) and aggravated battery with a deadly weapon (count four). In support of this claim, Petitioner argues that these convictions violate double jeopardy and that his conviction for burglary does not correlate with the jury instructions or information.

Petitioner raised this claim in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (App. G at 237.) The state court reasoned that convictions for burglary of a dwelling with assault and battery and aggravated battery did not violate double jeopardy because each offense contains an element the other does not. *Id*. Specifically, burglary includes the element of entering or remaining in a dwelling without consent whereas aggravated battery includes the element of great bodily harm. *Id*. The state court further noted that the offenses of burglary and aggravated battery are contained in separate statutes such that convictions for the offenses are not a double jeopardy violation pursuant to Section 775.021(4)(b)(2), Florida Statutes. *Id*. The state court concluded, therefore, that Petitioner had not established that he was prejudiced by counsel's failure to object to Petitioner's burglary and aggravated battery convictions based on double jeopardy. *Id*.

In the instant case, it is not clear from the statutory language of the relevant statutes whether the legislature intended to impose cumulative punishments for aggravated battery and burglary of a dwelling with assault or battery with a deadly weapon. As such, the Court must examine the statutes pursuant to the "same-elements" test.

Pursuant to Florida law, "[a] person commits aggravated battery who, in committing battery. . . [i]ntentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement. . . ." Fla. Stat. § 784.045(1)(a)(1) (2004). In contrast, Section 810.02(1)(b)(2)(c), Florida Statutes defines burglary as, "Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance . . . to commit or attempt

to commit a forcible felony. . . ." Thus, aggravated battery includes the element of causing great bodily harm, which is not a required element of the offense of burglary, whereas burglary includes the element of remaining in a dwelling, which aggravated battery does not. Thus, because each offense required proof of an element not included in the other offense, Petitioner was not subjected to multiple punishments for the same offense, and counsel was not ineffective for failing to raise this argument. *See, e.g.*, *Irizarry v. State*, 905 So. 2d 160, 167 (Fla. 3d DCA 2005) (citing *State v. Reardon*, 763 So. 2d 418, 419 (Fla. 5th DCA 2000) for the proposition that "there is no statutory or constitutional bar to the entry of convictions for both aggravated battery and burglary with a battery arising out of the same criminal episode" because "the crimes do not require proof of identical elements, 'the two offenses are not degrees of the same crime as provided by statute,' and 'neither offense is subsumed by the other.'"). As such, counsel was not deficient for failing to raise this argument, and Petitioner was not prejudiced by counsel's failure to do so.[2] Accordingly, claim nine is denied pursuant to Section 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## V.    *Certificate of Appealability*

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C.

---

[2]To the extent Petitioner contends that counsel rendered ineffective assistance by failing to argue that his conviction for burglary does not correlate with the jury instructions or information, this argument was addressed in claim three *supra.*

§ 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has demonstrated that reasonable jurists could find this Court's assessment of Petitioner's claim three debatable or wrong. Thus, a certificate of appealability is granted regarding whether trial counsel rendered ineffective assistance by failing to object to, and thereby preserve for review, the erroneous burglary jury instruction. A certificate of appealability is denied as to all other claims.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.     The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by David Leon Kendrick is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2.     Petitioner is **GRANTED** a Certificate of Appealability on claim three and **DENIED** a Certificate of Appealability on the remaining claims.

3.      The Clerk of the Court is directed to enter judgment accordingly and close

this case.

   **DONE AND ORDERED** in Orlando, Florida, this 30th day of September, 2011.

Copies to:
OrlP-1 9/30
Counsel of Record
David Leon Kendrick

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE